IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TAMMY PADGETT, and JOEY PADGETT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CV 315-048 |
| | ) | |
| KMART CORPORATION, and | ) | |
| COLONY MILL ENTERPRISES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**O R D E R**
_____

Before the Court are Defendants' motions to exclude the testimony of Plaintiffs' expert witness Mr. Jeffrey Gross. (Doc. nos. 43, 45.) Because the Court finds all of Mr. Gross's opinions reliable except Opinions Seven, Nine, and Eleven, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions.

**I.   BACKGROUND**

Plaintiffs filed this case in the Superior Court of Laurens County, in Dublin, Georgia, and on May 29, 2015, Defendants removed to this Court pursuant to 28 U.S.C. § 1441(a), § 1446(a) and (b), and § 1332(a). (Doc. no. 1, p. 3.) Plaintiffs allege that, on December 21, 2013, an unknown assailant assaulted and robbed Plaintiff in the parking lot of a Kmart store leased to Defendant Kmart Corporation ("Kmart") by Defendant Colony Mill Enterprises, LLC ("Colony Mill"). (Doc. no. 15, p. 2.) The complaint asserts Defendants had a duty to make the premises reasonably safe for customers, the incident was reasonably foreseeable,

and the attack was a direct and proximate result of Defendants' failure to make the premises safe. Additionally, Plaintiff Joey Padgett asserts a claim for loss of consortium. (Id.)

Plaintiffs retained Mr. Jeffery Gross, a premises liability consultant, to provide expert testimony supporting their allegation that Defendants failed to make the premises reasonably safe for customers. (Id. at 3.) Mr. Gross has been a premises liability consultant for the past sixteen years, has an Associate of Arts in Industrial Safety and Security, and has more than thirty-six years of experience in commercial premises security, negligence, safety, and loss prevention. (Doc. no. 33-1, pp. 5-8.) Mr. Gross frequently attends industry related seminars, has a certificate in safety management, and worked for more than sixteen years in security for Marriott Hotels, including nine years as an Area Loss Prevention Manager. (Id. at 5-6.) Mr. Gross inspected the property on September 2, 2015, and his expert witness report offers the following eleven conclusions:

Opinion One: At the time of the attack on December 21, 2013, Defendant Colony Mill Enterprises had no security plan. The basis for this opinion is defendant's response to Interrogatory No. 8 seen on Page 5 of Defendant Colony Mill Enterprises' response to plaintiff Tammy Padgett's first interrogatories.

Opinion Two: At the time of the attack on December 21, 2013, Defendant Kmart had no security plan regarding the protection of its customers in their parking lot. The basis for this opinion is Defendants' supplemental response to plaintiff Tammy Padgett's request for production of documents.

Opinion Three: The use of private security or off duty police officers to patrol large areas of land or parking lots is a usual customary and accepted standard practice in industrial, commercial, retail and private property settings.

Opinion Four: The use of a patrol vehicle or golf cart would have allowed this property to be patrolled in between three to five minutes

2

|                    | depending on the speed of the patrol. A patrol on foot may take longer. |
|---|---|
| Opinion Five:      | The use of high visibility security patrols could have alerted a potential perpetrator of an increased chance of detection and apprehension while committing undesirable or illegal acts in the Kmart parking lot. |
| Opinion Six:       | At the time of the attack no method was being used to deter undesirable or criminal behavior on this property including the use of closed circuit television cameras. |
| Opinion Seven:     | There is no evidence to suggest the perpetrator of this crime had information that Ms. Padgett was leaving the store at a particular time and walking to her vehicle. As such it was more likely than not the perpetrator was observing the area for a victim and used his bicycle to ride up on Ms. Padgett. A properly trained security officer could have observed a person watching the parking lot or riding about it with no apparent legitimate purpose and taken action. |
| Opinion Eight:     | The absence of any security or loss prevention efforts at this property could have provided an expectation of privacy for the perpetrator. |
| Opinion Nine:      | Given the totality of the circumstances in this case it is more likely than not the perpetrator considered an expectation of privacy and rapid escape from the location of this attack approximately 157 feet from the front doors of Kmart. |
| Opinion Ten:       | More likely than not had Kmart or Colony provided a high visibility patrol of this parking lot, Ms. Padgett would have not been attacked owing to the ability of security to detect, deter, or intervene. |
| Opinion Eleven:    | Kmart or Colony made no attempt to determine the scope of crime taking place on their property in the ten years prior to the attack of Ms. Padgett which included, felony theft, suspicious persons, robbery, breaking and entering an auto, fighting, and other crimes. |

(Doc. no. 33-1, pp. 3-4.)

## II. DISCUSSION

### A. Standard for Admissibility of Expert Testimony

Defendants move to exclude all of Mr. Gross's conclusions pursuant to Federal Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Eleventh Circuit has organized Rule 702 into three broad requirements known as the "qualifications," "reliability," and "helpfulness" prongs. See United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*). The burden of establishing these three requirements rests on the proponent of the expert opinion. See id. "[E]xperts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." Id. at 1260-61.

When evaluating the reliability of scientific expert testimony, the trial court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. In assessing reliability, a trial court has "considerable leeway"

4

in deciding which tests or factors to use. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). In Daubert, the Supreme Court suggested that a trial court consider: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." Daubert, 509 U.S. at 593-95.

These factors, however, are generally inapplicable in the context of non-scientific testimony. See Kumho, 526 U.S. at 152 (holding that expert's personal knowledge and expertise are relevant in non-scientific expert testimony). In such cases, the Advisory Committee Notes for Rule 702 suggest that courts consider factors such as:

(1) Whether [the expert] is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether [he has] developed [his] opinion expressly for purposes of testifying;

(2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion;

(3) Whether the expert has adequately accounted for obvious alternative explanations;

(4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting; and

(5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702 advisory committee's note (citations and internal quotations omitted); see also 325 Goodrich Ave., LLC v. SW Water Co., 891 F. Supp. 2d 1364, 1379 (M.D. Ga. Sept. 4, 2012).

However, the notes also indicate "other factors may also be relevant" and "no single factor is necessarily dispositive of the reliability of a particular expert's testimony." Fed. R. Evid. 702 advisory committee's notes (citations omitted). "When a witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. A trial judge is given considerable leeway in determining whether particular testimony is reliable. Kumho Tire, 526 U.S. at 152.

In evaluating the expert's testimony in light of these factors, the trial court must remain mindful that "Daubert does not require certainty; it requires only reliability." Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1198 n.10 (11th Cir. 2010). The focus of reliability "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595.

Expert testimony must also help the trier of fact to understand the facts in evidence or to determine a fact in issue. This consideration "goes primarily to relevance." Daubert, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant, and, ergo, non-helpful." Frazier, 387 F.3d at 1262. Expert testimony is additionally helpful "if it concerns matters that are beyond the understanding of the average lay person." Id. In other words, "expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262-63. Expert testimony also does not help the trier of fact if it fails to "fit" with the facts of the case. McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004). This occurs when "a large

analytical leap must be made between the facts and the opinion." Id. The court may exclude otherwise reliable testimony if it does not have "sufficient bearing on the issue at hand." Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1121 (10th Cir. 2004).

Ultimately, however, the trial court's gatekeeping role under Daubert "is not intended to supplant the adversary system or the role of the jury." Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999). Where the basis of expert testimony satisfies Rule 702, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." Daubert, 509 U.S. at 596.

### B. Mr. Gross is Qualified.

Defendants assert Mr. Gross is not qualified because his entire career is based in hotel loss prevention, and he has minimal experience working with big-box retail stores. (Doc. no. 45, pp. 5-6.) Mr. Gross is, however, qualified. Mr. Gross has an associate's degree in industrial safety and security, has been a commercial premises liability consultant for the past sixteen years, and has thirty-six years of experience and training in assessing risks and threats on commercial premises. (Doc. no. 53-1, p. 33, "Gross Dep.") Mr. Gross is a member of the American Society of Industrial Security, American Society of Safety Engineers, and the National Safety Council. (Id. at 7.) He lectures at continuing legal education programs, speaks at the premises liability seminar at the State Bar of Georgia, and has produced policies and procedures for in-house security departments for patrolling commercial parking lots and grounds. (Id. at 30.)

7

Mr. Gross is thus more than capable of rendering an expert opinion as to the security and safety of commercial premises, and Defendants' objections to Mr. Gross's qualifications are appropriate challenges to weight, not admissibility. Trilink Saw Chain, LLC. v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) ("[I]f there are gaps in an expert witness's qualifications or knowledge, they generally go to the weight of the witness's testimony not its admissibility.") (internal quotation marks omitted); see also Hendrix v. Evenflo Co., Inc., 255 F.R.D. 568 (N.D. Fla. 2009) ("[A]s to qualification, the standard for admissibility is not stringent . . . an expert must [only] be . . . minimally qualified in his field . . . .")

### C. Defendants' Motions Are Granted as to Opinions Seven, Nine, and Eleven.

Although trained experts commonly extrapolate from existing data, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). A court may conclude that there is simply too great of an analytical leap between the data and the opinion offered. Id. A district court must do more than "take the expert's word for it." Green v. Five Star Mfg., Inc., No. 2:14-CV-00449-SGC, 2016 WL 1243757, at *6 (N.D. Ala. Mar. 30, 2016). Daubert requires trial courts to act as gatekeepers to ensure that speculative and unreliable testimony does not reach the jury. McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002); Hull v. Merck & Co., Inc., 758 F.2d 1474, 1477 (11th Cir. 1985) (per curiam) (finding speculative testimony is at odds with purposes of expert testimony).

Here, Mr. Gross's seventh and ninth opinions are speculative. In his seventh opinion, Mr. Gross asserts "it was more likely than not the perpetrator was observing the area for a

8

victim and used his bicycle to ride up on Ms. Padgett . . . ." (Doc. no. 33-1, p. 4.) However, during his deposition, Mr. Gross admitted he knew of no evidence concerning when the assailant arrived in the parking lot, what he was doing in the parking lot before the attack, or how long he was in the parking lot before the attack. (Gross Dep. 41, 55.) Mr. Gross's inferences into the mindset of the unknown assailant are speculative and unreliable. (See id. at 41); Tindall v. H&S Homes, LLC, No. 5:10-CV-044 CAR, 2012 WL 3242128, at *8 (M.D. Ga. Aug. 7, 2012) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.").

Mr. Gross's ninth opinion is likewise speculative. Mr. Gross states it was "more likely than not the perpetrator considered an expectation of privacy and rapid escape from the location of this attack approximately 157 feet from the front doors of Kmart." (Doc. no. 33-1, p. 4.) This opinion is bereft of factual support and improperly speculates into the mindset of an unknown assailant who was never apprehended. See Joiner, 522 U.S. at 146; Tindall, 2012 WL 3242128 at *8.

In Opinion Eleven, Mr. Gross opines that Defendants made no attempt to determine the types and frequency of crime taking place on their property in the ten years prior to the attack. (Doc. no. 33-1, p. 4.) Defendants argue this opinion should be excluded because under Georgia law, a property owner has no duty to investigate police files and determine whether criminal activities have occurred on the premises. (Doc. no. 45, pp. 15-16; doc. no. 43-3, p. 7.); Wojcik v. Windmill Lane Apartments, Inc., 284 Ga. App. 766, 769 (2007). Defendants assert this opinion would cause juror confusion and would result in unfair prejudice to Defendants in violation of Fed. R. Evid. 403.

9

Here, Mr. Gross's eleventh opinion is not an expert opinion, but an alleged statement of fact with no foundation. Mr. Gross admitted he never had any contact with Defendants, and did not know whether and to what extent Defendants were aware of criminal activity in their parking lot prior to the incident. (Gross Dep. 19, 39.) Yet, in spite of these shortcomings, Mr. Gross purports to testify that Defendants took no action to determine the scope of crime on their premises. Furthermore, even if Mr. Gross had a firm source to support his assumptions, his eleventh opinion is a mere fact improperly clothed in expert regalia.

Because Opinions Seven, Nine, and Eleven are unreliable, they are subject to exclusion.

### D. Defendants' Motions are Denied as to the Remaining Opinions Because They are Reliable and Relevant.

#### 1. Opinions One and Two

Mr. Gross opines in Opinions One and Two that Defendant Colony Mill did not have a security plan in place, and that Defendant Kmart had no security plan regarding the protection of customers in the Kmart parking lot. (Doc. no. 33-1, p. 3.) In his deposition, Mr. Gross explains that Defendant Kmart maintained a security plan for the interior to protect assets and employees, but did not have a security plan for the exterior, save for the requirement that opening and closing managers drive around the building. (Gross Dep. 35.) Mr. Gross cites in support of these opinions Defendants' responses to Plaintiffs' interrogatories, Defendants' responses to Plaintiffs' request for production, his thirty-six years of experience and training in risk assessment, treatise material, and an on-site inspection. (Id. at 33-34.)

10

Defendants assert Opinions One and Two are irrelevant and unreliable because Mr. Gross does not point to supporting publications, treatises, or peer reviewed articles. (Doc. no. 43-3, p. 9; doc. no. 45, p. 10.) However, some types of expert testimony, such as premises security testimony, may not be evaluated on the Daubert factors of testing, peer review and publication, potential rate of error, and general acceptance in the relevant community. Childress v. Kentucky Oaks Mall Co., No. 5:06CV-54-R, 2007 WL 2772299, at *3 (W.D. Ky. Sept. 20, 2007). If a proposed expert opinion principally relies on experience and knowledge, a court must satisfy itself that the expert has appropriately explained how the expert's experience and knowledge has led to the conclusions, why the expert's experience provides a sufficient basis for the opinion, and why that experience is reliably applied to the facts. Clena Investments, Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 663 (S.D. Fla. 2012).

Although the nature of Mr. Gross's expert testimony renders Daubert's reliability factors largely unhelpful, the Court is satisfied Mr. Gross's experience was reliably used to reach his conclusions. See id. Mr. Gross testified he was critical of Defendants' failure to have an exterior security plan based on his thirty-six years of experience and training in assessing risks and threats. (Gross Dep. 33.) Mr. Gross further testified his opinion was supported by material from the American Society of Industrial Security and the Encyclopedia of Security Management which he relied on for guidance in conducting risk assessments. (Id. at 34.) Significantly, Mr. Gross distinguished between different types of security plans, explaining differences between interior security plans to protect assets and customers inside a store and exterior security plans to protect customers outside of the building. (Id. at 35-36.)

11

Mr. Gross's insight into security plans is relevant and will assist the trier of fact in determining issues beyond the purview of the average lay person. Frazier, 387 F.3d at 1262. Accordingly, Opinions One and Two are admissible.

## 2. Opinion Three

In Opinion Three, Mr. Gross opines that the use of private security or off duty police officers to patrol parking lots is a usual, customary, and accepted practice in industrial, commercial, and retail settings. (Doc. no. 33-1, p. 3.) Defendants assert Mr. Gross's opinion is both unreliable and unhelpful because Mr. Gross reaches his conclusion by analogy to other settings such as airports or shopping malls. (Doc. no. 45, p. 10; doc. no. 43-3, pp. 10-12.)

Whether an expert can testify to an industry's standard of care depends on whether the expert is competent or qualified. Adams v. Lab. Corp. of Am., 760 F.3d 1322, 1340 (11th Cir. 2014) ("[S]tandard-of-care expert testimony . . . is admissible so long as the expert is competent or qualified."); Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 405–409 (3d Cir. 2003) (concluding two experts were competent to testify about standard of care based, respectively, on "experience" and "qualifications"); Spencer v. Peters, No. C11-5424 BHS, 2013 WL 64772, at *3 (W.D. Wash. Jan. 4, 2013) (finding expert's qualifications and experience adequate basis to deem expert's opinions regarding standard of practice for interview techniques reliable and relevant). Here, as explained *supra*, the Court has determined Mr. Gross is qualified to render an expert opinion as to the security and safety of commercial properties generally, and accordingly, he is qualified to testify to industry customs and practices. See Adams, 760 F.3d at 1340. Mr. Gross's testimony in this regard

12

is reliably based on his thirty-six years of experience, and helpful to a trier of fact. Defendants' criticisms are more appropriate for cross examination. See McDowell, 392 F.3d at 1299; Trilink Saw Chain, 583 F. Supp. 2d at 1304.

### 3. Opinion Four

In Opinion Four, Mr. Gross opines the use of a patrol vehicle would allow the property to be patrolled in between three to five minutes, while a foot patrol would have taken longer. (Doc. no. 33-1, p. 3.) In preparing his opinions, Mr. Gross conducted an inspection of the Kmart property, and took photographs and measurements of the scene. (Id. at 1.) Mr. Gross's extensive survey of the Kmart property included visiting specific locations to examine sight lines, using Google Earth to ascertain linear distances, examining the property from various angles, and simulating both vehicular and foot patrols. (Gross Dep. 21-23; doc. no. 33-1, p. 2.) Mr. Gross additionally testified that his methodology was consistent and that he always initiated the inspection from the perimeter and proceeded to the interior. (Gross Dep. 28.) Based on his on-site inspection, Mr. Gross determined there were ten rows of parking spaces providing capacity for 540 cars, the distance from the end of the parking lot to the front door of Kmart was approximately 1,040 feet, and Plaintiff Tammy Padgett was attacked approximately 157 feet from the sidewalk in front of Kmart's building. (Doc. no. 33-1, p. 2.) Because Mr. Gross relied on the results of his on-site inspection and his many years of experience in rendering Opinion Four, the Court is satisfied that Opinion Four is reliable.

### 4. **Opinion Five**

In Opinion Five, Mr. Gross opines that the use of high visibility security patrols could have alerted a potential perpetrator of an increased chance of detection and apprehension in the Kmart parking lot. (Doc. no. 33-1, p. 3.) In his deposition, Mr. Gross further testified that a roving patrol is a usual and customary method of detecting and preventing criminal behavior. (Gross Dep. 45.) Defendants argue Opinion Five would be unhelpful to a jury because it is speculative and that Mr. Gross's opinion fails to consider that Plaintiff Tammy Padgett's injuries could have been attributed to some other cause. (Doc. no. 45, p. 12; doc. no. 43-3, p. 13.)

Mr. Gross's opinion fits within the facts of the case and does not require a large analytical leap. McDowell, 392 F.3d at 1299. Indeed, it is by no means controversial to opine that patrols deter crime by increasing the chance of detection and apprehension. Defendants' argument that Mr. Gross failed to consider other potential causes for the attack affects the weight of the analysis, not admissibility. See In re Mentor Corp. ObTape Transobturator Sling Products Liab. Litig., 711 F. Supp. 2d 1348, 1372 (M.D. Ga. 2010) ("Whether the experts considered every 'possible' alternative cause shall affect the weight of the testimony and not its admissibility."); In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig., 978 F. Supp. 2d 1053, 1070 (C.D. Cal. 2013) (finding argument that expert should have considered alternative explanations went to weight, not admissibility of testimony). Thus, the Court finds this opinion sufficiently reliable, and Defendants' criticisms are more appropriate for cross-examination.

### 5. Opinion Six

In Opinion Six, Mr. Gross opines that Defendants did not employ the use of closed circuit television cameras to deter criminal behavior. (Doc. no. 33-1, p. 3.) Mr. Gross testified that the use of the cameras could have deterred the attack by removing an expectation of privacy. (Gross Dep. 50-51.) Defendants again assert that this opinion is speculative, irrelevant, and unsupported by texts, treatises, or peer reviewed articles. (Doc. no. 43-3, p. 14; doc. no. 45, p. 12.)

Mr. Gross testified that based on his experience, closed-circuit cameras were easily able to record activity within 157 feet, and are frequently used at stores such as Walmart or Publix. (Gross Dep. 52.) Mr. Gross further testified he has written security plans calling for the use of closed circuit television cameras, and frequently recommends them. (Id.) In addition, he cited as support for his opinion, the American Society of Safety Engineers which suggests that closed circuit television cameras are beneficial and effective. (Id. at 51.) Given his on-site examination and review of the case, Mr. Gross concluded Defendants did not employ the use of closed circuit television cameras which could have deterred the attacker. For these reasons, Opinion Six is reliable and relevant.

### 6. Opinion Eight

In his eighth opinion, Mr. Gross asserts that the absence of security or loss prevention efforts could have provided an expectation of privacy for the attacker. (Doc. no. 33-1, p. 4.) Defendants object that this opinion is merely speculative. (Doc. no. 45, p. 13; doc. no. 43-3, p. 14.) To the extent Opinion Eight opines into the mindset of the attacker, it is subject to exclusion because it is speculative; however, here Mr. Gross does not speculate that the

15

assailant did, in fact, choose Defendants' parking lot for the attack because he had an expectation of privacy. (See doc. no. 33-1, p. 4.) Instead, it appears Mr. Gross is making a more general and well-founded observation that attackers are more comfortable and likely to attack in areas where relaxed security measures afford more privacy. (See id.) This generalized opinion is within the realm of Mr. Gross's expertise, and the Court finds this opinion sufficiently reliable and relevant. See Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 545 (1st Cir. 1988) (finding tentative or speculative testimony was not subject to exclusion as long as counsel has opportunity to attack expert's credibility).

### 7. Opinion Ten

In Opinion Ten, Mr. Gross asserts that had Defendants provided a high visibility patrol of the parking lot, the attack would likely not have occurred because the patrol would have detected the assailant and prevented the assault. (Doc. no. 33-1, p. 4.) Defendants argue that Mr. Gross disavowed this opinion in his deposition testimony, resulting in inconsistencies between Mr. Gross's expert report and his deposition testimony. (Doc. no. 45, p. 14; doc. no. 43-3, p. 12.)

In support of his opinion, Mr. Gross testified the absence of security foreclosed any possibility to detect, deter, or prevent criminal activity. (Gross Dep. 48.) Mr. Gross then suggested that had Defendants employed a security patrol, there would have been the possibility that the patrol could have witnessed and reacted to an attack, thus reducing the probability of an attack. (Id. at 47.) Here, Mr. Gross's expert assessment is that a patrol in this instance could have detected and prevented an attack; Mr. Gross does not speculate on what the assailant would or would not have done if confronted with security. (Id. at 48.) As

16

an expert on the safety and security of commercial properties, Mr. Gross is entitled to render an opinion as to the efficacy of security measures. Here, his opinion is supported by his personal investigation of the subject commercial premises and site of the attack. The Court finds this opinion, based largely on Mr. Gross's experience and knowledge, reliable and relevant, and Defendants' arguments concerning any inconsistencies between Mr. Gross's testimony and expert report do not justify exclusion and are more appropriate for cross-examination at trial. See In re AndroGel Antitrust Litig. (No. II), 888 F. Supp. 2d 1336, 1356 (N.D. Ga. 2012) (finding inconsistencies between expert's writings and expert's report were subject of cross examination and did not justify exclusion).

## VII. CONCLUSION

In sum, based on Mr. Gross's background and many years in the security industry, the Court finds Mr. Gross qualified as an expert in commercial premises safety and security. With the exception of his seventh, ninth, and eleventh opinions, Mr. Gross has adequately explained how his experience has led to his conclusions, why his experience is sufficient for his opinions, and how he has applied his experience to the facts of the case. Mr. Gross's opinions will assist a trier of fact in understanding the facts in evidence and determining facts in issue. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants'

motions. (Doc. nos. 43, 45.)

SO ORDERED this 8th day of July, 2016, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA