# In the United States District Court
# for the Southern District of Georgia
# Dublin Division

TAMMY PADGETT and JOEY PADGETT,

    Plaintiffs,

    v.

KMART CORPORATION and COLONY
MILL ENTERPRISES, LLC,

    Defendants.

CV 315-48

## ORDER

Plaintiffs Tammy Padgett and her husband, Joey Padgett, bring a premises liability claim against Defendants Kmart Corporation ("Kmart") and Colony Mill Enterprises, LLC arising from an assault on Mrs. Padgett that occurred in a parking lot on the evening of December 21, 2013. Plaintiffs seek compensatory and punitive damages.

Defendants filed Motions for Summary Judgment. Dkt. Nos. 41, 44. The parties fully briefed both. Dkt. Nos. 52, 54, 61, 62. Defendants also objected to Roger Hasty's testimony. Dkt. Nos. 61, 62. For the reasons set forth below, the Court will **EXCLUDE in part** the testimony of Roger Hasty and **GRANT** Defendants' Motions for Summary Judgment (Dkt. Nos. 41, 44).

# FACTUAL BACKGROUND

## The Night Mrs. Padgett Was Attacked

Living ten miles away and having a family business just down the street, Mrs. Padgett shopped at the Dublin, Georgia Kmart "a couple times a week." Dkt. No. 44-7, 28:19-29:17. On December 21, 2013, at about 6:00 p.m., Mrs. Padgett walked out of the front entrance toward her car, carrying several bags. Id. at 39:21-43:10. Her car was parked approximately 157 feet and eight or nine spaces away from the entrance sidewalk. Id. at 32:10-15; Dkt. No. 41-2, 21:15-16.

The evening was dusky, but not yet dark. Dkt. No. 44-7, 40:2-6. Mrs. Padgett did not "pay[] any attention" to the parking lot lights to see if they were on and working properly. Id. at 40:7-20, 42:16. Though she noted that "it's always been dark in [the Kmart] parking lot," this never deterred her from nighttime shopping. Dkt. No. 54-2, 41:23-42:11. She does not know how many lights are in the parking lot and never noted whether one was malfunctioning. Dkt. No. 44-7, 42:2.

## An Assailant Attacked Mrs. Padgett

When Mrs. Padgett got to her car, she leaned into the front passenger seat to arrange what she had bought. Dkt. No. 44-7, 48:2-3. She heard a clink and felt something hit the back of her head. Id. at 48:3-14. An unknown assailant shoved her into her car, squatted near her, and partly shut the car door. Id.

AO 72A
(Rev. 8/82)

at 48:2-49:4, 51:11-53:4. He threatened to cut Mrs. Padgett (he had a knife), repeatedly beat her head and face, and smashed her head into the dashboard. Dkt. No. 52-2, 57:22-23, 61:5-13, 65:20-66:8. He robbed Mrs. Padgett of a few dollars before fleeing on a bicycle. Id. at 56:14-15, 58:18-19, 67:16-23.

The incident lasted about ten minutes. Id. at 59:21. Mrs. Padgett never cried out or screamed, but once the attack was finished, she noticed that at least two cars that had been parked nearby before the attack had been driven away. Id. at 60:13-18, 61:2-4. Mrs. Padgett immediately drove to the front entrance of Kmart and alerted bystanders of the assault. Id. at 67:24-69:11. Because Mrs. Padgett was "in and out" of consciousness, she does not recall speaking with any store personnel. Id. at 69:16, 71:18-22.

Mrs. Padgett suffered severe and permanent physical and emotional injuries. Id. at 78:6-80:3, 84:18-21, 86:1-97:24.

**Neither Mrs. Padgett nor Kmart Knew of Prior Parking Lot Attacks**

Mrs. Padgett does not know of anyone else being attacked in the parking lot. Id. at 99:24-25. Before her attack, Mrs. Padgett had not even known of any physical confrontations between a customer and anyone else there. Id. at 29:23-30:5.

Vicki Wheeler managed the store the night of the attack. Dkt. No. 41-7, 34:23-35:9. She was at the service desk by the

front door and said that she "always tried to keep a pretty good eye out of what was going on." Id. at 35:1-8; 70:14-15.

She did not receive any reports of suspicious persons loitering in the parking lot prior to the assault. Id. at 67:8, 70:7-23. No one complained about inadequate lighting in the parking lot. Id. at 69:22-70:6. Wheeler stated that "there was never another incident, other than shoplifting, to where I should suggest that we . . . needed [additional security]." Id. at 76:4-6. Wheeler testified that had she known of area crime data, Kmart would have engaged the police department and been more proactive about customer safety. Dkt. No. 52-3, 25:2-10.

Brandon Cowart, who managed the Kmart from October 2012 to November 2013, dkt. no. 52-6, 8:10-12, does not recall any complaints about the parking lot lighting, id. at 21:3, or any prior incidents occurring in the parking lot. Id. at 14:8-15. Rather, customers complained about lighting in another end of the lot beside other stores. Id. at 21:3-7. Cowart did not observe any safety issues in the parking lot that prompted him to change the status quo. Id. at 42:20-25.

Plaintiffs maintain, however, that Kmart never made an effort to learn of parking lot safety issues. Dkt. No. 54-1 at 11 (alleging "Kmart's willful ignorance").

**Colony Mill Is Responsible for Kmart Parking Lot Safety**

The Kmart is in a shopping center owned by Colony Mill. Dkt. No. 44-1, 5:22-6:18. The center sits on approximately 8.32 acres and contains about 104,326 square feet of leasable space. Dkt. No. 34 at 6. There are around 323 parking spaces. Id. Kmart is one of six retailers. Dkt. No. 41-10, 10:3-4; Dkt. No. 44-1, 6:9-18; Dkt. No. 44-7, 33:12-13. A Dollar General and a Fred's are also located in the center, but do not lease from Colony Mill. Dkt. No. 64-4, 47:7-8; Dkt. No. 54-4, 10:5-12.

Kmart's lease assigned parking lot maintenance and safety to Colony Mill:

> [T]he following maintenance . . . shall remain [Colony Mill's] sole responsibility: . . . . [A]ll repairs and replacement including resurfacing (exclusive of sweeping, striping and snow removal) necessary to maintain all driveways, sidewalks, street and parking areas free of all settling, clear of standing water, and in a safe, sightly and serviceable condition, free of chuck holes, fissures and cracks. . . . [Colony Mill] shall contract for sweeping, striping, and snow removal for the parking areas, driveways, sidewalks and streets of the premises and maintain same in a clean, safe, sightly and serviceable condition.

Dkt. No. 44-3 ¶ 15.

Christopher McGarry, Colony Mill's property manager, understood Colony Mill's responsibilities to include "keep[ing] the place well-lit and . . . mak[ing] sure [that] the repairs are made on [sic] a timely fashion of the parking lot lights." Dkt. No. 41-10, 12:2-5. Colony Mill's owner, Don Schleicher,

confirmed that Colony Mill must provide "standard lighting, enough lighting for people to be able to see their way back to their cars." Dkt. No. 41-12, 8:14-16.

**Plaintiffs Sue Kmart and Colony Mill**

On May 29, 2015, Plaintiffs' suit against Defendants was removed to this Court. Dkt. No. 1. Plaintiffs allege that Defendants ignored "overwhelming evidence of danger" that made a violent parking lot crime reasonably foreseeable. Dkt. No. 15 ¶ 9. They rely on data showing that between 2005 and 2014, there were 297 incidents involving police at the Kmart. Id. ¶¶ 6, 9–11. Of these, 33 resulted in felony charges, 18 involved a physical altercation, 65 occurred in the parking lot, 8 involved a weapon, 10 involved a parking lot robbery, and 10 involved a suspicious person in the parking lot. Id. ¶ 6.

Plaintiffs hired Jeffrey Gross, a retail parking lot safety expert. Dkt. No. 33-1. He testified that "[t]he use of high visibility security patrols could have alerted a potential perpetrator of an increased chance of detection and apprehension while committing undesirable or illegal acts," id. at 3 ¶ 5, and that "[m]ore likely than not had Kmart or Colony [Mill] provided a high visibility patrol of [the] parking lot, Mrs. Padgett would not have been attacked." Id. at 4 ¶ 10.

Defendants' Motions for Summary Judgment are now ripe for the Court's review.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The movant must demonstrate the absence of a genuine issue of material fact by showing the court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986).

If it does so, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. It can do so in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient

AO 72A
(Rev. 8/82)

to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.

Where the nonmovant instead attempts to carry this burden with nothing more "than a repetition of [her] conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

In Georgia premises liability cases, "summary judgment is granted only when the evidence is plain, palpable, and undisputed." Robinson v. Kroger Co., 493 S.E.2d 403, 414 (Ga. 1997).

## DISCUSSION

### I. Hasty's Affidavit Is Partially Excluded

Defendants argue that this Court should not consider the affidavit of Roger Hasty because Plaintiffs failed to timely disclose him. Dkt. No. 61 at 16—18; Dkt. No. 62 at 1—4. Plaintiffs respond that: (1) Hasty was identified because he is within the disclosed category of "police officers who were

called to Kmart from 2005-2015 (identified in police reports),"
dkt. no. 64 at 2 (citing Dkt. No. 64-1 at 4); (2) Hasty's name
is listed "an innumerable number of times" in police reports
Plaintiffs sent to Defendants, id. at 3 (citing Dkt. No. 64-3);
and (3) Defendants, during three different depositions, queried
whether the individuals knew Hasty. Id. at 4 (citing Dkt. No.
64-4, 46:5—25; Dkt. No. 64-5, 15:17—19; Dkt. No. 64-6, 31:3—5).

The Court will only partially exclude the testimony,
because the content of Hasty's testimony was partially disclosed
during a deposition.[1] Federal Rule of Civil Procedure
26(a)(1)(A)(i) obligates disclosures:

> [A] party must, without awaiting a discovery request,
> provide to the other parties: . . . the name . . . of
> each individual likely to have discoverable
> information—along with the subjects of that
> information—that the disclosing party may use to
> support its claims or defenses . . . .

Rule 26(a)(1)(C) sets the deadline for such disclosures as
"at or within 14 days after the parties' Rule 26(f) conference."

The analysis of Bush v. Gulf Coast Electric Cooperative,
No. 5:13-CV-369, 2015 WL 3422336 (N.D. Fla. May 27, 2015), is
helpful. The Bush plaintiffs named a witness as a plaintiff's
former supervisor in their initial disclosure. Id. at *3. This

---

[1] Plaintiffs correctly argue that "a motion to strike an affidavit is
procedurally improper." Id. at 1. The Court therefore denies Colony Mill's
motion to strike and instead "consider[s] [it] insofar as it is a notice of
objection." Hawk v. Atlanta Peach Movers, Inc., No. 1:10-CV-0239, 2011 WL
1533024, at *2 (N.D. Ga. Apr. 21, 2011), aff'd, 469 F. App'x 783 (11th Cir.
2012) (per curiam) (unpublished opinion); see also Zottola v. Anesthesia
Consultants of Savannah, P.C., 169 F. Supp. 3d 1348, 1357 (S.D. Ga. 2013)
("[C]ourts tend to treat motions to strike as objections . . . .").

AO 72A
(Rev. 8/82)

"general disclosure" was "both common and appropriate," but "[t]here [was] nothing . . . that would alert the opposing party that [the witness] had material information." Id.

Plaintiffs here initially disclosed even less than the plaintiffs in Bush. Their general disclosure did not name Hasty, but rather, the entire category of "police officers who were called to Kmart between 2005-2015." This did not alert Defendants that Hasty had material information.

In Bush, the plaintiffs' inadequate initial disclosure triggered an "affirmative obligation" to identify the witness in interrogatory responses. Id. The plaintiffs' failure to do so resulted in an unacceptable "surprise witness . . . identified after the close of discovery." Id. Likewise, Plaintiffs failed to satisfy their affirmative obligation to identify Hasty as a material witness in their interrogatory responses.

However, Hasty was discussed during Wheeler's deposition. Padgett's attorney asked the following question: "Roger Hasting [sic] with the Dublin police department says that he told Kmart, somebody at Kmart, that he thought the lighting was inadequate, and he thought other officers had said that, too. . . . [H]ave you ever heard that?" Dkt. No. 64-4, 46:25-47:4. This question should have put Defendants on notice that Hasty "had discoverable information related to" parking lot lighting. See Ojeda-Sanchez v. Bland Farms, LLC, No. 6:08-CV-096, 2010 WL

AO 72A
(Rev. 8/82)

2382452, at *2 (S.D. Ga. June 14, 2010) ("From [a deposition] exchange, Plaintiffs should have been aware that [a witness] had discoverable information related to the topics testified to in his affidavit. Defendants were thus not required to identify [him] in their Rule 26 disclosures . . . ."); see also Fed. R. Civ. P. 26(e) (advisory committee's note) ("There is . . . no obligation to provide supplemental or corrective information that has been otherwise made known to the parties . . . during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition . . . ."). Hasty's affidavit testimony will therefore be **INCLUDED** in the Court's summary judgment analysis insofar as it discusses lighting.

Beyond this, however, Hasty's testimony is **EXCLUDED**. See Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of both witnesses and the subjects regarding which they possess information). Pursuant to Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to . . . identify a witness as required by Rule 26(a) . . . the party is not allowed to use that . . . witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." The Court considers three factors in determining whether to exclude an undisclosed witness: "(1) the importance of the testimony; (2) the reason for the [plaintiffs'] failure to disclose the

witness earlier; and (3) the prejudice to the opposing party if the witness . . . [is] allowed to testify." Pete's Towing Co. v. City of Tampa, 378 F. App'x 917, 920 (11th Cir. 2010).

These factors favor exclusion. Hasty's testimony is critical—Plaintiffs need it to create a question of material fact as to whether Kmart knew of violent parking lot crime.

Plaintiffs lack justification. They aver that three deponents were asked whether they knew Hasty. Dkt. No. 64 at 4 (citing Dkt. No. 64-4, 46:5–9; Dkt. No. 64-5, 15:12–21; Dkt. No. 64-6, 30:20–31:5). This is not the clear and unequivocal disclosure that federal litigation demands. See Berry v. Fla. Int'l Univ. Bd. of Trs., No. 06-21936, 2008 WL 203362, at *2 (S.D. Fla. Jan. 23, 2008) ("For years Courts throughout the land have been charged with eliminating 'trial by ambush.' A major purpose of discovery is eliminating surprise."). It is mimicry of the classic television game show What's My Line?, wherein panelists would ask a series of "yes or no" questions to discern their guests' occupations. See What's My Line?, IMDb, http://www.imdb.com/title/tt0042168/ (last accessed Nov. 8, 2016). That sort of guesswork might be fit for half an hour's amusement. But it would be absurd to burden Defendants' counsel with playing 21 questions mid-deposition to suss out the significance of every person who receives even the most fleeting mention. That Plaintiffs asked a few witnesses if they knew

AO 72A
(Rev. 8/82)

Hasty cannot stand as justification for covering up a star witness until his testimony appeared—voilà!—in defending against summary judgment.

Finally, Defendants will suffer prejudice if the Court considers Hasty's entire affidavit. "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witness in question." Berryman-Dages v. City of Gainesville, No. 1:10-CV-177, 2012 WL 1130074, at *2 (N.D. Fla. Apr. 4, 2012); see also Nance v. Ricoh Elecs., Inc., 381 F. App'x 919, 923 (11th Cir. 2010); Alvarado v. U.S., No. 10-CV-22788, 2011 WL 1769097, at *1 (S.D. Fla. May 4, 2011). Defendants had no opportunity to depose Hasty before moving for summary judgment because Plaintiffs did not disclose Hasty's parking lot crime testimony until approximately five weeks later. The Court may exclude such testimony. See Pete's Towing Co., 378 F. App'x at 920 (upholding district court's decision to exclude testimony after plaintiffs "filed the affidavits with its summary judgment papers five-weeks after the filing of defendants' motion"). For these reasons, the Court will **EXCLUDE** Hasty's testimony as to issues other than lighting.

## II.  Summary Judgment Is Granted to Defendants

A premises liability claim arises from "the claim that a [proprietor] was negligent in keeping its premises safe for

13

invitees." Chester v. Retail Prop. Tr., No. 1:01-CV-0787-JEC, 2003 WL 26085880, at *6 (N.D. Ga. Mar. 12, 2003). In Georgia, a plaintiff must prove four elements:

> (1) a legal duty to conform to a standard of conduct raised by the operation of law or contract; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of legal duty.

Id. (citing Brown v. RFC Mgmt., 376 S.E.2d 691, 693 (Ga. Ct. App. 1988)). Plaintiffs fail to do so as to both Defendants, and so summary judgment will be granted in Defendants' favor.

## A. Kmart's Motion for Summary Judgment (Dkt. No. 41)

### i. Facts Pertaining to Kmart's Motion

Kmart employed five security measures to protect patrons and employees. At night, employees were prohibited from either entering and exiting the building alone or opening the back door. Dkt. No. 41-7, 16:7-9.

Employees were instructed to never pursue criminals or intervene in physical altercations occurring beyond the entrance sidewalk. Dkt. No. 41-8, 16:23-17:9. Rather, they were to call the police—to prevent further injury and avoid accusations of their own wrongdoing. Id.

Employees were instructed to never pursue shoplifters into the parking lot. Dkt. No. 41-7, 77:5-23. They were to describe the criminal to the authorities instead. Id. at 77:5-9; Dkt.

AO 72A
(Rev. 8/82)

No. 41-9, 12:6-15:7. That said, several incident reports note that an employee pursued shoplifters into the parking lot. See Dkt. No. 52-9 at 5-6, 9-11.

When opening and closing the store, management employees and key holders inspected the store's exterior perimeter. Dkt. No. 41-7 at 28:15-33:5.

Finally, Kmart technicians performed semiannual inspections in April and October 2013, featuring a walking inspection of the store's exterior—and assessment of the parking lot and security lighting. Dkt. No. 41-8, 43:19-24; Dkt. No. 54-1 at 7. Any deficiencies or recommendations would be addressed with Colony Mill. Dkt. No. 54-1 at 7. Colony Mill was responsible for ensuring that lights would be serviced or replaced as reports came in. Id. at 8. The record is devoid of evidence that such reports were ever made. Dkt. No. 54-4, 15:25-16:3.

### ii. The law

#### a. Kmart owed no duty to Mrs. Padgett

Kmart primarily argued that Plaintiffs failed to satisfy the first negligence element—proving that Kmart owed Mrs. Padgett a duty. The Court agrees. O.C.G.A. § 51-3-1 is the basis for determining whether Kmart owed Mrs. Padgett a duty:

> Where an owner or occupier of land by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his

AO 72A
(Rev. 8/82)

failure to exercise ordinary care in keeping the premises and approaches safe.

Several statutory possibilities are clearly inapplicable here. Kmart does not own the parking lot. Colony Mill does. Mrs. Padgett, then, was not injured on Kmart's premises.

The questions that remain are whether Mrs. Padgett was injured on Kmart's approaches or Kmart occupied the parking lot. Neither possibility holds true.

### 1. Mrs. Padgett was not injured on Kmart's approaches.

The parking lot area where Mrs. Padgett was attacked is not part of Kmart's approaches. Georgia case law defines "approach" as including public ways that are

> [d]irectly contiguous, adjacent to, and touching those entryways to premises under the control of an owner or occupier of land, through which the owner or occupier, by express or implied invitation, has induced or led others to come upon his premises for any lawful purpose, and through which such owner or occupier could foresee a reasonable invitee would find it necessary or convenient to traverse while entering or exiting in the course of the business for which the invitation was extended. [The words] "contiguous, adjacent to, and touching" . . . mean that property within the last few steps taken by invitees, as opposed to "mere pedestrians," as they enter or exit the premises.

Motel Props., Inc. v. Miller, 436 S.E.2d 196, 198 (Ga. 1993) (citations and punctuation omitted).

"[A]n approach to a . . . store includes the 'sidewalk immediately in front of and adjacent to the premises . . . , but

it [does] not include the landlord owned and maintained parking lot adjacent to the sidewalk.'" Drayton v. Kroger Co., 677 S.E.2d 316, 317 (Ga. Ct. App. 2009) (quoting Food Lion, Inc. v. Isaac, 582 S.E.2d 476, 477 (Ga. Ct. App. 2003)); see also Motel Props., Inc., 436 S.E.2d at 199 (same).

The parking lot is beyond Kmart's entrance sidewalk, and it is owned and maintained by Colony Mill. Dkt. No. 44-7, 32:10–15; Dkt. No. 41-2, 21:15–16; Dkt. No. 44-3 ¶ 15; Dkt. No. 41-10, 12:2–5; Dkt. No. 41-12, 8:14–16. It is not an approach.

Plaintiffs respond that Kmart owed a duty under Wilks v. Piggly Wiggly Southern, Inc., 429 S.E.2d 322 (Ga. Ct. App. 1993). There, the Georgia Court of Appeals held that a store could be held liable even given "unrebutted evidence establishing that it was not the owner or in control of the area in which [the plaintiff] was attacked nor was it responsible for maintaining the lighting in the area." Id. at 323. But the defendant store in Wilks knowingly "permitted [the attackers] to loiter on [its] premises, lying in wait for their victims." Id. Kmart did nothing similar to imperil Mrs. Padgett. Kmart did not owe her a duty under an approaches theory.

> ### 2. Kmart did not occupy the parking lot.

Neither did Kmart owe Mrs. Padgett a duty as the parking lot's occupier. Plaintiffs argue that Kmart occupied the lot by

AO 72A
(Rev. 8/82)

maintaining "at least two or three cart corrals" there, having employees help customers carry goods to their vehicles, and keeping an eye on the lot for lighting issues or suspicious people. Dkt. No. 54 at 15-17, 20-21; Dkt. No. 54-6, 18:22-23.

Georgia courts have not clearly explained how much activity a party needs to undertake to become an occupier. Ishmael v. Gen. Growth Props., Inc., No. CV 114-175, 2014 WL 7392516, at *3 (S.D. Ga. Dec. 29, 2014) (noting "apparent inconsistency" between rulings restricting occupation to those with legal control over property and rulings reaching others). It is possible that "occupiers" are in the statute as a catch-all category for those who hold most of the sticks that the property-rights bundle comprises, but happen to lack fee simple for one reason or another.

At the very least, an occupier has to have a supervisory role over the property. As five cases make clear, this means doing more than Kmart did with the parking lot:

In Poll v. Deli Management, Inc., No. 1:07-CV-0959, 2007 WL 2460769, at *4 (N.D. Ga. Aug. 24, 2007) (citations omitted), a sister district court noted the possibility that occupiers could include "managers charged with maintenance duties, other maintenance contractors, and security personnel." Kmart was not charged with parking lot maintenance duties under its lease with Colony Mill, and it certainly was not a maintenance contractor.

Nor did it serve as Colony Mill's security team, even if its employees occasionally pursued shoplifters into the lot.

In <u>Westmoreland v. Williams</u>, 665 S.E.2d 30 (Ga. Ct. App. 2008), the Georgia Court of Appeals held that a defendant occupied a building by hosting an exclusive party inside and buzzing people in. Kmart could not exclude anyone from the lot, as parking space was shared by six businesses.

In <u>Gregory v. Trupp</u>, 319 S.E.2d 122, 124 (Ga. Ct. App. 1984), the Georgia Court of Appeals held that a defendant might have occupied a vacant lot given that it had a contract to mow the grass; that its employees "regularly went . . . to pick up trash, trim bushes, maintain shrubs, and pick up pine cones; that [an employee] had, on a number of occasions, ordered children off the vacant lot; that, on one occasion, [an employee] called the police and had them remove a boy from the vacant lot; and that [an employee] regularly went upon the lot to pick up trash." Kmart had no contractual maintenance duties. There is no evidence that its employees tidied up the lot.

To the extent that employees were told to call the police regarding lot activity, this is distinguishable from <u>Gregory</u>. <u>Gregory</u> held that a party might be signaling special interest in a vacant lot by going through the trouble of phoning in trespassers. But it is unsurprising that Kmart authorized employees to contact police regarding the parking lot it shared

19

with others.  Doing so did not signal special interest in the lot as much as it did common sense and neighborliness.

In Scheer v. Cliatt, 212 S.E.2d 29, 31 (Ga. Ct. App. 1975), the Georgia Court of Appeals listed factors for occupation: "Who managed the daily operations of the [property] . . . ?  Who had the right to admit or exclude customers?  Who maintained and repaired the premises?  . . .  What were the responsibilities of the parties under the lease?"  Each of these weighs against finding that Kmart occupied the lot.  Kmart had no management role over the lot's daily functioning.  Kmart had no right to admit or exclude parkers.  It did not maintain or repair the parking lot, but rather, referred all such needs to Colony Mill.

Lastly, Ott v. Wal-Mart Stores, Inc., No. 5:09-CV-00215, 2010 WL 582576, at *2 (M.D. Ga. Feb. 16, 2010), held that a manager might count as a building occupier because he "was responsible for making certain that there were no defects in the ceiling . . . , checking that any puddles on the floor were cleaned, and ensuring that zoning and safety sweeps were being properly performed."  In some respects, Kmart's relationship to the parking lot was similar.  It did serve as Colony Mill's eyes and ears in checking for defects.  But context is everything.  In Ott, the manager was an employee of the landowner, and his job duties included building safety.  Id.  Kmart is not Colony

AO 72A
(Rev. 8/82)

Mill's employee. It is its tenant. And its lease does not impose upon it the duties of parking lot maintenance and safety.

Kmart did not occupy the lot. Nor was the lot part of Kmart's approaches.[2] Thus, Kmart did not owe Mrs. Padgett any duty, and summary judgment for Kmart is appropriate.

### b. The attack on Mrs. Padgett was not reasonably foreseeable

Kmart would be entitled to summary judgment even if it had owed Mrs. Padgett a duty, because the attack on Mrs. Padgett was not reasonably foreseeable. "[A]n owner or occupier must protect an invitee against the criminal act of a third party only to the extent that the criminal act is reasonably foreseeable." B—T, Two, Inc. v. Bennett, 706 S.E.2d 87, 92 (Ga. Ct. App. 2011). The burden of proving foreseeability lies on Plaintiffs. Gordon v. Starwood Hotels & Resorts Worldwide, Inc., 821 F. Supp. 2d 1308, 1313 (N.D. Ga. 2011).

Prior crimes in the parking lot were too dissimilar to establish foreseeability and there is no genuine issue of material fact regarding the lot's lighting.

---

[2] Because occupation depends on how and how much Kmart used the parking lot, the discussion above equally responds to Plaintiffs' argument that Kmart "extend[ed] [its] approach[es] due to some 'positive action on [its] part.'" Dkt. No. 54 at 18 (quoting Motel Props., Inc., 436 S.E.2d at 198; (quoting Elmore of Embry Hills v. Porcher, 183 S.E.2d 923, 925 (Ga. Ct. App. 1971))). See Motel Props., Inc., 436 S.E.2d at 199 ("[E]ven assuming . . . that the sidewalk past the motel's property constituted an extension of the approach . . . [the plaintiff's] fall did not occur on the sidewalk but instead occurred on rocks some 27 feet past the end of the sidewalk at a location over which the motel exercised no positive control. We reject the argument that the duty imposed on owners and occupiers of land . . . extends to what at best is an approach to an approach.").

## 1. Prior crimes were too dissimilar.

Plaintiffs must show that the attack was "substantially similar to previous criminal activities occurring on or near the premises such that a reasonable person would take ordinary precautions to protect invitees from the risk." _Agnes Scott Coll., Inc. v. Clark_, 616 S.E.2d 468, 470 (Ga. Ct. App. 2005). Prior crimes must: "(1) occur at comparable locations; (2) occur under similar physical circumstances and conditions; (3) be of similar type; and (4) not be too remote in time." _Gordon_, 821 F. Supp. 2d at 1313.

Plaintiffs rely on all crimes that occurred in either Kmart or the parking lot between February 24, 2008, and December 21, 2013. Dkt. No. 54-15. But the majority of these occurred _inside_ Kmart. They did not occur in a similar location.

Of the 65 crimes in the lot, only two[3] were similar in both type and physical circumstances and conditions. The first occurred in December 2008; a victim was mugged by someone with a gun. Dkt. No. 54-15 at 3. The second was in July 2012, when a thief "snatched" a purse "from [a victim's] shoulder," then ran "towards the rear of Kmart." Dkt. No. 54-15 at 9.

---

[3] Nonviolent property crimes—including shoplifting, theft by taking, criminal damage to property, and damage to vehicles—did not place Kmart "on notice that customers were in danger of being the victim of violent criminal activity in the parking lot." _Drayton v. Kroger Co._, 677 S.E.2d 316, 318 (Ga. Ct. App. 2009); _see also_ _Doe v. Prudential-Bache/A.G. Spanos Realty Partners, L.P._, 492 S.E.2d 865, 867 (Ga. 1997); _Baker v. Simon Prop. Grp., Inc._, 614 S.E.2d 793, 795-96 (Ga. Ct. App. 2005); _Gordon_, 821 F. Supp. 2d at 1314; _Agnes Scott Coll., Inc._, 616 S.E.2d at 471; _Whitmore v. First Fed. Sav. Bank of Brunswick_, 484 S.E.2d 708, 710 (Ga. Ct. App. 1997).

AO 72A
(Rev. 8/82)

These incidents occurred too remote in time from Mrs. Padgett's attack—the first, more than five years prior, and the second, more than eighteen months prior. The second incident was also dissimilar in type to the attack on Mrs. Padgett, as there is no indication that the thief threatened, assaulted, or injured the victim when he stole her purse.

Plaintiffs have no evidence that prior crimes were similar enough to make Mrs. Padgett's attack reasonably foreseeable.

### 2. The lot's lighting does not establish foreseeability.

Plaintiffs also argue that Mrs. Padgett's attack was foreseeable because Kmart knew that the parking lot's lighting was inadequate. Dkt. No. 54 at 27. They rely on Hasty's affidavit, which states:

> I, along with other members of the Dublin Police Department, was concerned about the inadequacy of lighting in the parking area outside the K-mart store. On at least one occasion prior to December 21, 2013, I notified K-mart employees that the inadequate lighting in the parking lot created a dangerous condition. I did this because I was concerned that a customer would get hurt. Through [leaving the Dublin police in] September 2012, I never saw this lighting deficiency corrected.

Dkt. No. 52-8 ¶ 8.

Even assuming this to be true, Kmart is entitled to summary judgment. "[T]here is no liability . . . [where] the invitee has as much knowledge of the danger as the proprietor." Gordon, 821 F. Supp. 2d at 1315 (citing Pound v. Augusta Nat'l, Inc.,

279 S.E.2d 342, 345 (Ga. Ct. App. 1981)). Mrs. Padgett understood the lot's darkness at least as well as did Kmart.

Mrs. Padgett was highly familiar with the Kmart, the parking lot, and the neighborhood. She lived ten miles away and had a family business just down the street. Dkt. No. 44-7, 29:4-17. She shopped at the Kmart "all [her] adult life . . . . a couple times a week." Id. at 29:1-13. She had shopped after darkness fell enough times that she testified that "[i]t's always been dark in that parking lot." Id. at 41:16-17. She never noticed any dysfunction with the lights—not even on the night she was attacked. Id. at 42:8-17.

For its part, Kmart never received any complaints from customers regarding inadequate lot lighting, on the night of the attack or any other time prior to Mrs. Padgett's assault. Dkt. No. 44-5, 71:1-8; Dkt. No. 52-6, 21:3. Nor were there complaints of suspicious persons loitering around the entrance of Kmart or in the lot prior to the attack. Dkt. No. 41-7, 67:8. This was not because Kmart turned a blind eye: Wheeler said that she was stationed near the front door, where she "always tried to keep a pretty good eye out of what was going on." Id. at 35:1-8, 70:14-15.

Perhaps some Kmart employees were warned about lighting by a police officer at some point prior to September 2012. Mrs. Padgett still had at least as much awareness of the risk on the

AO 72A
(Rev. 8/82)

night of December 21, 2013 as did the store. Kmart saw nothing out of the ordinary that night and had no particular reason to fear for customer safety. Mrs. Padgett, meanwhile, had her own observations of the darkness of the parking lot and the neighborhood's character, accumulated over a lifetime. She thus knew of at least as much of a risk as did Kmart.

Because Mrs. Padgett "knew of and appreciated the danger and willingly proceeded, despite the danger," "there [was] no duty on the part of [Kmart] to warn [her] and there is no liability for resulting injury." Gordon, 821 F. Supp. 2d at 1315 (citing Pound, 279 S.E.2d at 345).

A reasonable jury could not conclude that the attack on Mrs. Padgett was reasonably foreseeable in light of the uncontested evidence considered as a whole. Accordingly, even if the Court held that Kmart owed Mrs. Padgett a duty, summary judgment on Kmart's motion would still be warranted.[4]

**B. Colony Mill's Motion for Summary Judgment (Dkt. No. 44)**

Colony Mill relies on its Dublin tenants to notify it of any problems or dangers, given that it has no offices or employees in Georgia. Dkt. No. 44-4 ¶ 3.

---

[4] Plaintiffs seek punitive damages. Dkt. No. 15 ¶ 12. These may only be awarded in tort cases given a valid actual damages claim. Nash v. Stoddard, 670 S.E.2d 508, 515 (Ga. Ct. App. 2008) (citing Nelson & Hill, 537 S.E.2d 670, 677 (Ga. Ct. App. 2000)); Rhone v. Bolden, 608 S.E.2d 22, 32 (Ga. Ct. App. 2004). Kmart is thus entitled to summary judgment on this claim, too.

AO 72A
(Rev. 8/82)

While Kmart's lease makes Colony Mill responsible for parking lot upkeep and safety, the agreement is silent as to security in particular. Dkt. No. 44-3 at 10-11; Dkt. No. 44-2, 11:19-12:5. However, Colony Mill's owner stated that "if there was enough crime, there would be a point where we would have to . . . do something to protect customers." Dkt. No. 44-1, 8:22-9:1 (emphasis added).

McGarry called Kmart ten to twenty times a year to ensure that Kmart did not require any other services. Dkt. No. 44-2 at 15:2-9. Kmart never notified him of customer safety concerns, lot criminal activity, or lot lighting problems. Dkt. No. 44-2, 14:14; Dkt. No. 52-4, 15:25-16:4; Dkt. No. 44-4 ¶¶ 6-8. Nor did Colony Mill's other tenants complain about safety. Id. at 17:7.

Colony Mill did not review area police reports. Dkt. No. 44-1, 8:1-8; Dkt. No. 44-2, 17:21-18:13. Police never contacted it regarding incidents in the lot. Dkt. No. 44-2, 28:17-29:13.

The first negligence element is met. Colony Mill, a landowner, owed Mrs. Padgett, an invitee, a duty to "exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1.

But the breach element is only satisfied where an owner fails to protect an invitee from a reasonably foreseeable third-party criminal act. B-T, Two, Inc. v. Bennett, 706 S.E.2d 87, 92 (Ga. Ct. App. 2011). Plaintiffs claim that Mrs. Padgett's

attack was reasonably foreseeable because of prior crimes. Dkt. No. 52 at 13-20. As explained above, the Court disagrees. See § III(A)(ii). Accordingly, Colony Mill did not breach any duty.

There are two other reasons why this is so. First, there is no evidence demonstrating that Colony Mill knew of any of the prior incidents. The record is devoid of evidence that Colony Mill reviewed police reports regarding the lot,[5] dkt. no. 44-1, 8:1-8, or that the police ever contacted it regarding security or lighting. Dkt. No. 44-2, 28:17-29:13.

Plaintiffs argue that Colony Mill turned a blind eye, citing McGarry's testimony that he did not inquire as to security trouble. Dkt. No. 52 at 6. This is selective reading:

> Q    The interrogatory answer to number nine for Colony [Mill] also says that in . . . conversations with managers, no safety concerns ever came up. Is that an accurate statement?
>
> A    Yes, it is.
>
> Q    Did you, Mr. McGarry, ever specifically ask Kmart store managers about any safety concerns?
>
> A    No.

Dkt. No. 52-4, 15:25-16:7. McGarry called Kmart ten to twenty times a year. Dkt. No. 44-2, 15:2-9. Kmart apparently determined that the non-violent property crimes occurring at the store and parking lot did not merit mention. Dkt. No. 52-4, 15:25-16:4; Dkt. No. 44-4 ¶¶ 6-8. This does not mean that

---

[5] It was not legally required to do so. Whitmore v. First Fed. Sav. Bank of Brunswick, 484 S.E.2d 708, 710 (Ga. Ct. App. 1997).

AO 72A
(Rev. 8/82)

Colony Mill buried its head in the sand. It was simply unaware of prior incidents.

Secondly, as discussed above regarding Kmart, <u>supra</u> § III.A.ii.b.2, Mrs. Padgett's claim that Colony Mill knew more than she did about the risk of an attack in the lot because Colony Mill knew of inadequate lighting is untenable.

Plaintiffs thus failed to satisfy their burden as to the second negligence element. Colony Mill's Motion for Summary Judgment is granted.[6]

## CONCLUSION

For these reasons, the Court **GRANTS** Kmart's Motion for Summary Judgment (Dkt. No. 41) and Colony Mill's Motion for Summary Judgment (Dkt. No. 44). The Clerk of Court is **DIRECTED** to enter the appropriate judgment and to **CLOSE** this case.

**SO ORDERED**, this 15th day of November, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[6] Plaintiffs also seek punitive damages. Dkt. No. 15 ¶ 12. As the Court explained supra, <u>see</u> n. 4, because Colony Mill has prevailed on all other claims, it is also entitled to summary judgment on this one.

.O 72A
Rev. 8/82)